UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAMELA STEPHAN                                  CIVIL ACTION

VERSUS                                          NO: 09-3712

GREATER NEW ORLEANS FEDERAL                     SECTION: R
CREDIT UNION, ET AL.

**ORDER AND REASONS**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (R. Doc. 10). For the following reasons, the motion is GRANTED IN PART, and plaintiff's remaining state-law claim is DISMISSED WITHOUT PREJUDICE.

**I. Background**

This dispute arises out of plaintiff Pamela Stephan's employment with one of the defendants, the Greater New Orleans Federal Credit Union ("GNOFCU"). All the facts are taken from the face of the complaint, which the Court presumes to be true. *See Priester v. Lowndes County*, 354 F.3d 414, 419 (5th Cir. 2004). Stephan was employed by GNOFCU as an accountant who was occasionally responsible for internal auditing. While performing an internal audit in March of 2008, Stephan allegedly noticed that two loans that had been approved by the CEO of GNOFCU, Janet

1

Sanders, did not conform to GNOFCU policy.  After writing a report on the incident and submitting a copy of it to Sanders, Sanders sent Stephan a "rather cryptic email."  This email stated that if Stephan found errors in any additional loans that Sanders had approved, she was to send the loan back to Sanders for correction.  Two weeks later, another GNOFCU employee informed Stephan that Sanders no longer wished for Stephan to audit loans and complete audit reports, and Stephan was eventually asked to stop performing internal audits altogether.

Stephan did not receive a raise during the next month, which was when raises were typically disbursed.  She alleges upon information and belief that she was denied a raise because she had identified irregularities in GNOFCU loans and had brought them to the attention of the management.

Some time later, a GNOFCU teller informed Stephan that a group of mortgage loans "were starting to show collection issues," and that even though the loans were in the names of multiple members, a single member had come into the branch and paid cash for the loans.  Furthermore, in May of 2008, the Collections/Lending Manager of GNOFCU contacted Stephan regarding a member who wished to make a large loan.  The member's file allegedly contained multiple tax returns for the same year, with each return bearing "significantly different amounts of income." After discussing the issue, Stephan and the Collections/Lending

Manager spoke to the relevant mortgage lender, Carol Maguire. According to Stephan, Maguire "became visibly agitated and told them that it was not her responsibility because [Sanders] had approved the loan." Stephan alleges upon information and belief that Maguire related this conversation to Sanders.

On June 5, 2008, Sanders informed Stephan that she was fired. According to Sanders, Stephan was fired because she had forwarded internal emails to a former GNOFCU employee. Stephan denies that she ever did so, and further contends that she was terminated without the consent of GNOFCU's supervisory board. She has not been rehired.

Stephan filed suit in this Court on June 2, 2009. Her complaint alleges that GNOFCU violated the Federal Credit Union Act, 12 U.S.C. § 1751, *et seq.*, for retaliating against her for reporting a possible violation of the law. It further alleges that GNOFCU violated the Louisiana Whistleblower Protection Act. LA. REV. STAT. § 23:967. Defendants now move to dismiss.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads

facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1940. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 256. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

**III. Discussion**

*A. Federal Credit Union Act*

Stephan alleges that defendants violated a section of the Federal Credit Union Act that protects employees from reprisal after they report a possible violation of the law. That section reads as follows.

> No insured credit union may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to the [National Credit Union Administration Board] or the Attorney General regarding any possible violation of any law or regulation by the credit union or any director, officer, or employee of the credit union.

12 U.S.C. § 1790b(a)(1). Defendants assert that the plain text of this provision protects employees who provide information about "any possible violation of any law or regulation," but only when they provide this information either to the National Credit Union Administration Board ("Board") or to the Attorney General. According to defendants, Stephan's Complaint alleges that the only people with whom Stephan discussed possible violations of the law before her termination were internal GNOFCU employees. At no point does she allege that she shared any information with the Board or with the Attorney General.

Defendants' contention is correct. Their argument is not only supported by the language of the statute, but it is also supported by the decisions of all the courts that have faced this

5

question. For example, *Wyrick v. TWA Credit Union*, 804 F. Supp. 1176 (W.D. Mo. 1992), faced with the question of whether § 1790b(a)(1) should be construed to cover employees who provide information to parties other than the Board or the Attorney General. The court held that it should not. "To read the cause of action [of § 1790b(a)(1)] to include reports to other persons would require the court to ignore the plain language of the statute and the purposes of the legislation." *Id.* at 1179. It found that the legislation that led to § 1790b(a)(1) arose out of the need to enhance the regulatory powers of the agencies that oversee credit unions. Information brought to the attention of the Board and the Attorney General would further that goal and allow allegations of fraud and abuse to reach the relevant regulatory body.

> If the information is never brought to their attention, but to a nonregulatory authority instead, the regulatory authority does not have the chance to take corrective or preventative measures as is the goal of the statute. There is no evidence in the legislative history that one purpose of the legislation was simply to eliminate retaliation against an employee for reporting possible unlawful activity to management, however admirable such a goal may be. The goal of the statute clearly is to advance the effectiveness of the regulatory system. Encouraging "whistleblowing" to a federal official is but one way of reaching that goal.

*Id.* Other courts examining the provision have reached the same conclusion. *See Fain v. Transmission Builders Fed'l Credit Union*, No. 04-354, 2005 WL 2126778, at *2 (S.D. Ind. Sept. 1, 2005) ("§ 1790b identifies only two qualified recipients, the

6

NCUA and the Attorney General. . . . [D]isclosures beyond these bodies are unprotected revelations to nonregulatory entities."); *see also Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1254-55 (9th Cir. 1997) (affirming district court's dismissal of § 1790b claim because plaintiff "does not allege that he provided any information to the NCUA or to the Attorney General regarding illegal conduct by [defendant] or its directors, officers, or employees"); *Ridenour v. Andrews Fed'l Credit Union*, 897 F.2d 715, 721 n.5 (4th Cir. 1990) (noting that a litigant fails to state a claim when he does not allege a report of possible violations to the Board or the Attorney General); *Simas v. First Citizens' Fed'l Credit Union*, 63 F. Supp. 2d 110, 113 (D. Mass. 1999) (noting that § 1790b(a)(1) requires the plaintiff to have filed the information with the government).

Stephan, however, contends that she did provide information to the Board. Before filing this suit, she provided the Board with a copy of her complaint, as is required by the Act. 12 U.S.C. § 1790b(b). This is insufficient under § 1790b(a)(1). Again, that section provides protection to employees who are discharged "because" they provided information to the Board or to the Attorney General. Stephan contends that she supplied the Board with information on May 28, 2009, nearly a year after she was terminated by GNOFCU. The inclusion of the word "because" in the statute makes clear that the employee's termination must have

7

resulted from the report to the Board or the Attorney General. Stephan could not have been terminated "because" of a report that she had not yet made at the time of her firing. *Cf. Fonteneaux v. Shell Oil Co.*, 298 Fed. App'x 695, 698 (5th Cir. 2008) (holding that summary judgment for defendant in Title VII action was appropriate when the decision to terminate plaintiff was made *before* he engaged in protected activity); *see also Jimenez v. Potter*, 211 Fed. App'x 289, 290-91 (5th Cir. 2006) (holding that an employee was not retaliated against for filing a complaint with the Postal Service Equal Employment Office when he was demoted *before* he filed the complaint).

Stephan further argues, if the Court finds her complaint insufficient for failure to make a report, that her claim should be dismissed without prejudice so she can supply notice to the Board and then raise her claim again. Again, this argument reflects a misunderstanding of the statute. Supplying information to the Board at this date will do nothing for the sufficiency for her claim, because she still will not have been fired "because" she submitted a report. Her claim is therefore dismissed with prejudice.

*B. Louisiana Whistleblower Protection Act*

Stephan next alleges that she was terminated in violation of the Louisiana Whistleblower Protection Act. La. Rev. Stat.

8

§ 23:967. The parties dispute the requirements and application of the Act. The Court, however, has disposed of the only claim arising under federal law, and the Court does not have original jurisdiction the Louisiana Whistleblower Protection Act claim, which arises under State law. Accordingly, the Court must consider whether to continue to exercise supplemental jurisdiction over plaintiff's remaining claim. *See* 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In addition to the statutory factors, the court must also balance the factors of judicial economy, convenience, fairness, and comity. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002). The Court has "wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). Still, the "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims have been eliminated prior to

trial.  *Amedisys*, 298 F.3d at 446-47.

Here, the Court has dismissed the claims over which it had original jurisdiction.  Only a state-law claim remains, and the Court has no independent basis for jurisdiction over it.  The Court has not yet addressed the merits of this claim, and doing so will require it to delve into sophisticated issues of state law.  The Louisiana Whistleblower Protection Act fundamentally implicates the level of protection that the State of Louisiana affords to those who report fraud, abuse, or law-breaking within their own organizations.  Louisiana's interest in defining the borders of this law is strong, and principles of comity thus weigh in favor of allowing a state forum to adjudicate this case.  Furthermore, because this litigation is still in its early stages, the goal of judicial economy will not be harmed by the dismissal of the state-law claim.  The Court therefore finds that the rule counseling against the exercise of supplemental jurisdiction over state-law claims when no federal claims remain applies in this case, and it dismisses plaintiffs' state-law claim without prejudice.

**IV. Conclusion**

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART.  Plaintiff's remaining state-law claim is DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this  16th   day of November, 2009

_____
        SARAH S. VANCE
   UNITED STATES DISTRICT JUDGE